**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LEAP WIRELESS INTERNATIONAL, INC. and CRICKET COMMUNICATIONS, INC.<br>　　Plaintiffs,<br><br>v.<br><br>METROPCS COMMUNICATIONS, INC.<br>　　Defendant/Counterclaim Plaintiff,<br><br>v.<br><br>LEAP WIRELESS INTERNATIONAL, INC., ET AL.<br>　　Counterclaim Defendants. | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:06-CV-240 (TJW) |

**<u>MEMORANDUM ORDER</u>**

Before the Court are Third Party Defendants Thomas Bernard and Harvey White's Motions to Dismiss (#39 and #40, respectively). After reviewing the parties' briefs and applicable case law, the Court DENIES the motions for the reasons set forth below.

**I.   Introduction**

Plaintiffs Leap Wireless International, Inc.[1] ("Leap") and Cricket Communications, Inc. filed this lawsuit against MetroPCS Communications, Inc. ("MetroPCS") for infringement of U.S. Patent No. 6,813,497 ("the '497 patent") entitled "Method for Providing Wireless Communication Services and Network and System for Delivering Same." MetroPCS subsequently filed a third-party complaint against numerous third-party defendants, including Thomas Bernard ("Bernard") and Harvey White ("White"). In its third-party complaint, MetroPCS alleges that Bernard and White,

---

[1] Leap Wireless International, Inc. was formed by Qualcomm Inc. and later spun off as its own independent company.

former senior officers at Qualcomm Inc. ("Qualcomm")[2], misappropriated confidential information and trade secrets in order to obtain patents, including the patent-in-suit, for Leap. Bernard and White now move to dismiss MetroPCS's third-party complaint against them pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, in the alternative, for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

**II.   Discussion**

    **A.   Personal Jurisdiction**

A federal court may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the applicable state law. *See* Fed. R. Civ. P. 4(e)(1). In this action, the Texas long-arm statute allows for the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

In the exercise of personal jurisdiction over a nonresident defendant, due process requires that 1) the defendant purposefully avail himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and 2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Felch v. Transportes Lar-Mex*, 92 F.3d 320, 323 (5th Cir. 1996); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "Minimum contacts" can be established through specific or general jurisdiction.[3] *Alpine View Co.*,

---

[2] During the time at issue in these claims, Bernard was Senior Vice President and General Manager of the Infrastructure Division at Qualcomm, and White was President, Chief Executive Officer, and Board Vice Chairman of Qualcomm. Bernard and White later became founding members of Leap. White eventually became the Chief Executive Officer of Leap.

[3] MetroPCS does not contend that Bernard or White's contacts are sufficient to support general jurisdiction. The Court's analysis, therefore, will focus on specific jurisdiction.

205 F.3d at 215.

Specific jurisdiction exists if the nonresident defendant "purposefully direct[s] [his] activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quoting *Burger King Corp. v. Rudzewick*, 471 U.S. 462, 472 (1985)). When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the nonresident defendants, the forum state and the litigation. *See Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 624-25 (5th Cir. 1999). The defendants' conduct and connections with the forum state must show that they "should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). The defendant, however, does not have to physically enter the state. *Cole v. Tobacco Inst.*, 47 F. Supp. 2d 812, 815 (E.D. Tex. 1999).

The following three-part test is used when deciding whether there is specific jurisdiction:

(1) Did the defendant have minimum contacts with the forum state-purposely directing its activities toward the forum state or purposely availing itself of the privilege of conducting activities therein? (2) Did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts? (3) Would the exercise of personal jurisdiction be reasonable and fair? *Guidry*, 188 F.3d at 625 (citation omitted).

In addressing the third prong of the test, the defendants "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 630 (citations omitted). The following areas are normally examined when making a determination of fairness: 1) the defendant's burden, 2) the forum state's interests, 3) the plaintiff's interest in convenient and effective relief, 4) judicial system's interest in efficient resolution of controversies, and 5) the shared interest of several states in furthering fundamental social policies. *Id.* at 630 (citations omitted).

3

When the Court decides a motion to dismiss without holding an evidentiary hearing, the plaintiff only needs to make a *prima facie* showing of the facts on which jurisdiction is predicated. *Alpine View Co.*, 205 F.3d at 215. In deciding whether a *prima facie* case exists, the Court must accept as true the plaintiff's "uncontroverted allegations, and resolve in [their] favor, all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.*

### 1. Thomas Bernard

The first prong of the specific jurisdiction test is met with respect to Bernard because there is no dispute that he directed certain activities toward the State of Texas. These activities include phone calls to Texas, at least one meeting in Texas, and a "commitment letter" sent to General Wireless.[4]

The second prong of the test is in dispute. Bernard argues that his activities directed toward Texas relate only to Qualcomm's efforts to sell and finance infrastructure equipment to General Wireless and, therefore, do not give rise to the plaintiffs' cause of action. MetroPCS, however, alleges that during the phone calls to Texas and during the meeting in Texas, Bernard was given trade secret information which was later misappropriated. At this stage, any conflict must be construed in favor of MetroPCS. Accordingly, the *prima facie* evidence indicates that MetroPCS's cause of action for misappropriation of trade secrets arose, in part, out of Bernard's contacts with the State of Texas.

The court now turns to the third prong of the test to see if the exercise of personal jurisdiction would be reasonable and fair. Bernard argues that he is now retired and that traveling to Texas would be unduly burdensome and expensive. MetroPCS, on the other hand, argues that Bernard is

---

[4] General Wireless was MetroPCS's predecessor.

a key witness in the case and may be called to testify at trial. At this stage, the Court must resolve the conflict in favor of MetroPCS and, therefore, agrees with MetroPCS that Bernard would not be unduly or unreasonably burdened. The parties do not dispute that the State of Texas has a substantial interest in this litigation because Bernard is alleged to have committed tortious acts directed at the State of Texas. It is also clear that MetroPCS has a strong interest in the convenient and effective relief of this lawsuit. The judicial system also shares an interest in the resolution of all controversies in this case, including the original complaint of patent infringement suit and the third-party complaint for misappropriation of trade secrets which are closely aligned with each other. In summary, the Court finds that the exercise of personal jurisdiction over Bernard would be fair and reasonable.

MetroPCS has established a *prima facie* case for this Court to exercise personal jurisdiction over Bernard. Accordingly, Bernard's motion to dismiss for lack of personal jurisdiction is denied.

### 2. Harvey White

The court now turns to the first prong of the specific jurisdiction test as it applies to White. White argues that he has never had any contact MetroPCS in Texas or its representatives in Texas while employed at Qualcomm or Leap, nor did he have any direct involvement with the efforts to sell infrastructure equipment to General Wireless. White, however, states that he may have met with some people at MetroPCS as part of a "grip and grin" or "meet and greet" situation. White also argues that MetroPCS has provided no evidence of telephone calls, correspondence, or personal visits with MetroPCS. MetroPCS, on the other hand, argues that White had several contacts and attended several meetings with representatives from MetroPCS where he obtained confidential information. MetroPCS further contends that White, as President and Chief Executive Officer of

Qualcomm and Leap, was in a position to instruct other individuals to meet with MetroPCS's representatives in an effort to obtain trade secrets under the guise of trying to sell wireless equipment. At this stage, the Court must resolve the conflict between the affidavits offered by the parties in favor of MetroPCS and finds that White purposefully directed activities toward MetroPCS in the State of Texas.

The second prong of the test is also satisfied. As with Bernard, MetroPCS contends that, at the meetings with MetroPCS, White was given confidential and trade secret information which was later misappropriated.

As to the third prong of the test, White makes the same arguments as Bernard regarding the fairness and reasonableness of this Court exercising personal jurisdiction. The third prong is, therefore, satisfied as discussed above in Bernard's case.

MetroPCS has established a *prima facie* case for this Court to exercise personal jurisdiction over White. Accordingly, White's motion to dismiss for lack of personal jurisdiction is denied.

### B.    Improper Venue

Bernard and White also argue that this case should be dismissed because venue does not exist in this district as to them. MetroPCS, however, contends that venue is proper under the doctrine of ancillary venue. The doctrine of ancillary venue states that third-party defendants have no standing to raise a defense that venue is improper. *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004). Ancillary venue applies to parties who are added in connection with compulsory counterclaims. 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1436 (2d ed., current through 2006 update).

In their reply brief, Bernard and White argue that ancillary venue is not applicable because

MetroPCS's counterclaim is not compulsory, but permissive. Therefore, the issue is whether MetroPCS's counterclaim is compulsory or permissive.

A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). The appropriate inquiry in determining whether a counterclaim is compulsory is to ask:

> 1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; 2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; 3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and 4) whether there is any logical relationship between the claim and the counterclaim. *Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992) (citation omitted).

The counterclaim is compulsory if there is an affirmative answer to any of the four questions. *Id*.

In this case, the original claim involves patent infringement and the counterclaim involves misappropriation of trade secrets. According to Bernard and White, these are two completely different "transactions or occurrences" because the patent infringement involves the defendants' alleged infringing activities while the misappropriation of trade secrets involves the third-party defendants' conduct prior to the issuance of the patent. MetroPCS, on the other hand, argues that its counterclaim is compulsory because its declaratory judgment of invalidity of the '497 patent is based on trade secret misappropriation by Bernard, White, and others. MetroPCS also seeks damages for the misappropriation of trade secrets that resulted in the '497 patent.

The Court agrees with MetroPCS that its counterclaim against Bernard and White is compulsory.[5] First, a logical relationship exists between a declaratory judgment of invalidity and

---

[5] MetroPCS also points out that Bernard and White's position in this case is contrary to its position in a pending California state case involving the same parties. In arguing for a motion to stay in the California state case, Bernard and White state that the misappropriation of trade secrets in this case are compulsory counterclaims to the patent infringement claims. *See*

7

the original patent infringement claims when they involve the same patent-in-suit. *See Akzona Inc. v. E.I. du Pont de Nemours & Co.*, 662 F. Supp. 603, 618 (D. Del. 1987) (stating that a declaratory judgment action and counterclaim for infringement involving the same patents are both seeking to define the scope and determine the validity of those patents); *Texas Instruments Inc. v. Micron Semiconductor*, 815 F. Supp. 994, 997 n.4 (E.D. Tex. 1993) (stating that a claim for infringement is a compulsory counterclaim to a declaratory judgment action involving the same patents). Here, Leap contends that MetroPCS infringes the '497 patent. MetroPCS counterclaims that the '497 patent is invalid based on misappropriation of trade secrets by Bernard, White and others. These two claims involve the scope and validity of the patent-in-suit and are, therefore, logically related to each other.

Second, a claim for misappropriation of trade secrets may be a compulsory counterclaim to a claim for patent infringement when the two claims involve many of the same parties, the same underlying design concept, and much of the same evidence and course of conduct. *See Mopex, Inc. v. American Stock Exchange, LLC*, 2002 WL 342522, *6-7 (S.D.N.Y. March 5, 2002). Here, MetroPCS's counterclaim for misappropriation of trade secrets involves Leap and its officers at the time of the misappropriation. It also involves the same underlying design concept as the patent-in-suit. The Court, therefore, finds a logical relationship between the Leap's original claim for patent infringement and MetroPCS's counterclaim for misappropriation of trade secrets.

Because the Court finds that MetroPCS's counterclaim is compulsory, the doctrine of ancillary venue applies in this case. Accordingly, Bernard and White, as third-party defendants, do

---

MetroPCS's Sur-Reply, Exh. A. There is no need to address MetroPCS's argument that the doctrine of collateral estoppel applies because the Court agrees with MetroPCS that its counterclaim for misappropriation of trade secrets is compulsory.

not have standing to raise an improper venue defense, and their motions to dismiss for improper venue are denied.

**III.     Summary**

Based on the evidence at this stage of the case, the Court finds that Bernard and White purposefully directed activities to the State of Texas.  Accordingly, this Court has personal jurisdiction over Bernard and White.  The Court further finds that the doctrine of ancillary venue applies to MetroPCS's counterclaims.  Accordingly, the Eastern District of Texas, Marshall Division, is the appropriate venue for MetroPCS's claims against Bernard and White.  Bernard and White's motions to dismiss are DENIED.

SIGNED this 14th day of February, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE